469 So.2d 735 (1985)
STATE of Florida, Petitioner,
v.
Chapman Levi CREIGHTON, Respondent.
No. 64471.
Supreme Court of Florida.
May 2, 1985.
Rehearing Denied June 20, 1985.
Jim Smith, Atty. Gen. and Gregory C. Smith, Asst. Atty. Gen., Tallahassee, for petitioner.
P. Douglas Brinkmeyer, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for respondent.
BOYD, Chief Justice.
This cause is before the Court on petition for review of a decision of the District Court of Appeal, First District, State v. Creighton, 438 So.2d 1042 (Fla. 1st DCA 1983). The decision of which review is sought is an order dismissing an appeal brought by the state in a criminal case. The district court certified that its decision directly conflicts with State v. W.A.M., 412 So.2d 49 (Fla. 5th DCA), review denied, 419 So.2d 1201 (Fla. 1982). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Respondent was charged in a two-count information with first-degree arson in violation *736 of section 806.01(1)(a), Florida Statutes (1981),[1] and failure to put out or control a fire or give a prompt fire alarm in violation of section 877.15(1), Florida Statutes (1981).[2] The case proceeded to trial and at the close of the evidence, respondent moved for a judgment of acquittal on both counts on the ground that the evidence was insufficient to warrant convictions. See Fla.R.Crim.P. 3.380.[3] The judge declined to grant judgment of acquittal at that time and submitted the case to the jury. The jury returned a verdict of not guilty on count one, arson, but a verdict of guilty on the second count, charging failure to put out or control a fire or give a prompt alarm by a person with a legal duty to do so.
Five days after the reception of the verdicts in court, the defense filed a combined motion for arrest of judgment, renewal of the motion for judgment of acquittal, and motion for new trial. The court held a hearing on the renewal of the motion for judgment of acquittal. Following the hearing, the trial judge granted judgment of acquittal on count two.
The state brought an appeal from the trial court's judgment and the district court of appeal dismissed the appeal. The issue before us is whether the state is entitled to appellate review of the trial court's order granting judgment of acquittal.
Section 924.07, Florida Statutes (1981), authorizes appeals by the state in criminal cases as follows:
The state may appeal from:
(1) An order dismissing an indictment or information or any count thereof;
(2) An order granting a new trial;
(3) An order arresting judgment;
(4) A ruling on a question of law when the defendant is convicted and appeals from the judgment;
(5) The sentence, on the ground that it is illegal;
(6) A judgment discharging a prisoner on habeas corpus;

*737 (7) An order adjudicating a defendant insane under the Florida Rules of Criminal Procedure; or
(8) All other pretrial orders, except that it may not take more than one appeal under this subsection in any case.
Such appeal shall embody all assignments of error in each pretrial order that the state seeks to have reviewed. The state shall pay all costs of such appeal except for the defendant's attorney's fee.
A trial court's order granting a motion for judgment of acquittal is not among the rulings set out in the statute and thereby identified as appealable by the state in criminal cases.[4] In dismissing the state's appeal, the district court cited Whidden v. State, 159 Fla. 691, 32 So.2d 577 (1947), which held that the state's right of appeal in criminal cases is purely statutory. Thus the district court indicated that its dismissal of the appeal was based on the lack of statutory authority. The state argues, however, that it has a right to an appeal conferred not by statute, but by the Constitution of Florida.
The state relies on article V, section 4(b)(1), Florida Constitution, which provides in pertinent part that the district courts of appeal
shall have jurisdiction to hear appeals, that may be taken as a matter of right, from final judgments or orders of trial courts ... not directly appealable to the supreme court or a circuit court.
The state argues, in effect, that this provision confers upon any litigant the right to appeal a final judgment or order of a trial court. As authority for this proposition, the state relies on State v. W.A.M., 412 So.2d 49 (Fla. 5th DCA), review denied, 419 So.2d 1201 (Fla. 1982). In that decision, the district court of appeal held the state could appeal an order of speedy-trial discharge in a juvenile case, even though "no statute or rule authorize[d] it," on the ground that article V, section 4(b)(1), conferred a constitutional right of appeal. Id. at 50.
The district court in W.A.M. relied upon Crownover v. Shannon, 170 So.2d 299 (Fla. 1964), where this Court held that the constitutional provision pertaining to the jurisdiction of the district courts of appeal did indeed confer a right to appeal final judgments of trial courts. The district court in W.A.M. acknowledged that Crownover was decided under a previous version of the constitution and that the difference in language is "substantial," but simply concluded: "we do not believe such changes were intended to eliminate the right of appeal from final judgments." 412 So.2d at 50.
The argument of the state in support of its effort to overturn the decision of the district court in the instant case requires for its proper resolution some discussion of constitutional history. In 1956, article V of the Florida Constitution was substantially revised. Among the amendments was the provision creating the district courts of appeal. Prior to the establishment of the district courts of appeal in 1957, the Supreme Court of Florida had
appellate jurisdiction in all cases at law and in equity originating in Circuit Courts, and of appeals from the Circuit Courts in cases arising before the Judges of the County Courts in matters pertaining to their probate jurisdiction and in *738 the management of the estates of infants, and in cases of conviction of felony in the criminal courts, and in all criminal cases originating in the circuit courts.
As can readily be seen, the Supreme Court was, under article V of the Constitution of 1885, prior to the 1956 revision, the single court of general appellate jurisdiction of major cases.[5]
In Whidden v. State, 159 Fla. 691, 32 So.2d 577 (1947), this Court said, "The state's right to appeal is purely statutory, and is found in Sections 924.07 and 924.08, Fla. Stat. 1941... ." Id. at 692, 32 So.2d at 578. Applying that principle, the Court held that an order of a county judge quashing an instrument charging a criminal offense could be appealed by the state to the circuit court. The Court's opinion shows that it was accepted as obvious that the existence of statutes defining the circumstances under which the state could appeal adverse rulings in criminal cases was to be controlling. Thus it is clear that before the 1956 amendment, the state's right of appeal was purely statutory. State v. Frear, 155 Fla. 479, 20 So.2d 481 (1945).
In 1956 article V was revised and the district courts of appeal were created. The appellate jurisdiction of those courts was defined in pertinent part as follows:
(3) Jurisdiction. Appeals from trial courts in each appellate district, and from final orders or decrees of county judge's courts pertaining to probate matters or to estates and interests of minors and incompetents, may be taken to the court of appeal of such district, as a matter of right, from all final judgments or decrees except those from which appeals may be taken direct to the supreme court or to a circuit court.
The supreme court shall provide for expeditious and inexpensive procedure in appeals to the district courts of appeal, and may provide for review by such courts of interlocutory orders or decrees in matters reviewable by the district courts of appeal.
The district courts of appeal shall have such powers of direct review of administrative action as may be provided by law.
Art. V, § 5(3), Fla. Const. of 1885 (1956). The Crownover v. Shannon decision, relied upon by the district court in W.A.M. as discussed above, was an interpretation of the above-quoted language, specifically the indication that "appeals ... may be taken ... as a matter of right... ." Although it had been opined that the definition of the new district courts' appellate jurisdiction was not intended to create any substantive rights not existing before, but only to re-allocate jurisdiction, see Opinion of the Attorney General 056-306 (October 16, 1956), this Court in Crownover said:
The right to appeal from the final decisions of trial courts to the Supreme Court and to the District Courts of Appeal has become a part of the Constitution and is no longer dependent on statutory authority or subject to be impaired or abridged by statutory law, but of course subject to rules promulgated by the Supreme Court regulating the practice and procedure.
Crownover v. Shannon, 170 So.2d at 301. It should be noted that Crownover was a civil case.
Crownover stands for the legal proposition that the 1956 amendment defining the appellate jurisdiction of the district courts, by using language different from that used to define appellate jurisdiction in article V prior to the 1956 amendment, had created a constitutional right of appeal that did not exist under prior law. If indeed the 1956 change of language was intended to have such effect, then it would follow that a subsequent substantial change in the constitutional *739 language was similarly intended to alter the effect of the jurisdictional provisions.
Where there is a significant change in the language of the constitution, it is to be presumed that the change was intentional and was intended to have a different effect from the prior language. See, e.g., In re Advisory Opinion to the Governor, 112 So.2d 843 (Fla. 1959); Swartz v. State, 316 So.2d 618 (Fla. 1st DCA 1975). The 1956 language interpreted in Crownover, providing that "[a]ppeals ... may be taken to the court of appeal ... as a matter of right," art. V, § 5(3), Fla. Const. of 1885, was eliminated by the 1972 revision of article V. As has been stated previously the present language brought about by the 1972 revision provides that the district courts of appeal "shall have jurisdiction to hear appeals, that may be taken as a matter of right, from final judgments or orders of trial courts ... not directly appealable to the supreme court or a circuit court." Art. V, § 4(b)(1), Fla. Const. The elimination of the language found dispositive in Crownover must be taken as having intended to negate the interpretation given by Crownover that the constitution had bestowed a right of appeal, thus returning to the long-standing rule stated in State v. Whidden that the state's right of appeal is controlled by statute.
Principles of English usage indicate that the present language was not intended to provide that all final orders and judgments are appealable as a matter of constitutional right. The word "that" is the restrictive, or defining pronoun. It introduces matter that defines, restricts, modifies, or qualifies the matter to which it refers. On the other hand, the word "which" is the nonrestrictive or nondefining pronoun and is used to introduce a separate, independent, or additional fact about the matter referred to. W. Strunk and E.B. White, The Elements of Style 53 (1972). So, the clause, "that may be taken as a matter of right," restricts the term "appeals" so as to apply the grant of jurisdiction only with regard to appeals that may be taken as a matter of right. Nothing is said about the circumstances under which a litigant has the right to take an appeal. The reader is in effect told to look elsewhere to determine whether there is such a right. In order to plainly say that all final judgments may indeed be appealed as a matter of right, the constitution would have to use the clause "which may be taken as a matter of right." In such a context, "which" does not define or restrict such appeals but independently describes them, adding information in a way that would have independent substantive effect. See M. Kammer and C. Mulligan, Writing Handbook 117-18, 138, 151-52 (1953). If the word "which" had been used instead of "that," one could logically interpret the language to confer upon a litigant the right to appeal a final judgment or order. See also H.W. Fowler, Modern English Usage 713 (1937). But we must look at the language actually used, and that language indicates that the question of when an aggrieved litigant is entitled to an appeal is a matter to be determined by sources of authority other than the constitution.
Moreover, during the period from 1957 through 1972, when the language underlying the Crownover decision (a civil case) was in effect, the courts of Florida continued to operate under the assumption that the state's right of appeal in criminal cases was governed by statute. See, e.g., Carroll v. State, 251 So.2d 866 (Fla. 1971); Jenkins v. Lyles, 223 So.2d 740 (Fla. 1969); State v. Diamond, 188 So.2d 788, 789 (Fla. 1966); State v. Harris, 136 So.2d 633 (Fla. 1962); State v. Schroeder, 112 So.2d 257 (Fla. 1959); State v. Shouse, 177 So.2d 724 (Fla. 2d DCA 1965); Balikes v. Speleos, 173 So.2d 735 (Fla. 3d DCA 1965). Cases decided after the 1972 revision of article V still recognize the right of appeal as a matter of substantive law controllable by statute not only in criminal cases but in civil cases as well. See, e.g., State ex rel. Sebers v. McNulty, 326 So.2d 17 (Fla. 1975); Clement v. Aztec Sales, Inc., 297 So.2d 1 (Fla. 1974); State v. Matera, 378 So.2d 1283 (Fla. 3d DCA 1979); State v. I.B., 366 So.2d 186 (Fla. 1st DCA 1979); State v. Brown, *740 330 So.2d 535 (Fla. 1st DCA 1976); see generally Fla.R.App.P. 9.140, Committee Note.
This understanding is in keeping with the common-law rule that a writ of error[6] would lie for the defendant but not for the state. Thus it is now generally held that, unless expressly provided for by statute, in criminal cases the state is not entitled to appeal adverse judgments and orders. See United States v. Sanges, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892). The general common-law rule applied not only to judgments rendered upon verdicts of acquittal but also to determinations of questions of law. Id.
The weight of authority is overwhelming, not only in this country but in England, that the writ will not lie at the instance of the State, and it is evident from the character of the legislation on the subject in this State that it has never been contemplated that the State could further pursue parties who had obtained judgment in their favor in prosecutions by indictment, whether by the judgment of the court or the verdict of a jury.
State v. Burns, 18 Fla. 185, 187 (1891). In view of this virtual prohibition of the common law, we can see sections 924.07 and 924.071 as strictly limited and carefully crafted exceptions designed to provide appellate review to the state in criminal cases where such is needed as a matter of policy and where it does not offend against constitutional principles.[7] The existence of these statutes and the established understanding of their purpose are incompatible with the suggestion that article V, section 4 confers a right on any litigant to appeal any adverse final judgment or order.[8]
In view of the above considerations  the fact that Crownover interpreted constitutional language that has been changed, that court decisions decided after the constitutional change make clear that appeals by the state are governed by statute, that Crownover itself was an aberration in interpretation of the pre-1973 language, that the present constitutional language merely allocates jurisdiction rather than conferring appeal rights, and that the common-law rule provides insight into the meaning and purpose of the criminal appeal statutes  we reaffirm the principle that the state's right of appeal in criminal cases depends on statutory authorization and is governed strictly by statute.
We note that the right of litigants to appeal in non-criminal cases is governed by statute as well. One would expect this as a matter of logical consistency. See chapter 59, Florida Statutes (1983) (appeal rights in general civil cases); § 120.68, Fla. Stat. (1983) (judicial review of administrative agency action). The rights to appeal various *741 specific kinds of judicial and administrative acts are provided for by various specific statutes. See, e.g., § 75.08, Fla. Stat. (1983) (bond validations); § 382.45, Fla. Stat. (1983) (appeals of judicial action on petition for certification of birth facts).
Having determined that the state's right of appeal is governed by statute, we now come to the remaining question of whether either section 924.07 or section 924.071 provides for an appeal by the state in the circumstances of this case. As will be recalled, the jury acquitted respondent of arson but convicted him of failure to control or give warning of the fire. Respondent then renewed his previously made motion for acquittal as is permitted under criminal rule 3.380. The court granted an acquittal, and it was this order that the state sought to challenge on appeal.
The respondent's request for a court-ordered judgment of acquittal was part of a combined motion which also included a motion for new trial under rule 3.600 and a motion for arrest of judgment under rule 3.610. The state may appeal an order granting a new trial by virtue of section 924.07(2) and may appeal an order in arrest of judgment under section 924.07(3). But it is clear that the court's order was in response to respondent's motion for judgment of acquittal and was in fact a judgment of acquittal. Nowhere in sections 924.07 or 924.071 is provision made for appeal by the state from an order granting a judgment of acquittal. Therefore the appeal of such an order is not authorized and is simply not available.
The suggestion that a judge's ruling on a motion for acquittal on the ground of insufficient evidence is a question of law for which an appeal could be allowed the state without running afoul of the double jeopardy clause is unavailing to the state here. If the statute were to provide such an appeal, then the constitutional question might well be raised. But the statute makes no provision for an appeal of a trial judge's judgment of acquittal either before or after the verdict so we need not reach the constitutional question.
For the foregoing reasons, the decision of the district court of appeal, dismissing the state's appeal from a judgment of acquittal, is approved.
It is so ordered.
OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[1] Section 806.01(1), Florida Statutes (1981), provides:

(1) Any person who willfully and unlawfully, by fire or explosion, damages or causes to be damaged;
(a) Any dwelling, whether occupied or not, or its contents;
(b) Any structure, or contents thereof, where persons are normally present, such as: Jails, prisons, or detention centers; hospitals, nursing homes, or other health care facilities; department stores, office buildings, business establishments, churches, or educational institutions during normal hours of occupancy; or other similar structures; or
(c) Any other structure that he knew or had reasonable grounds to believe was occupied by a human being, is guilty of arson in the first degree which constitutes a felony of the first degree punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] Section 877.15, Florida Statutes (1981), provides:

Any person who knows, or has reasonable grounds to believe, that a fire is endangering the life or property of another, and who fails to take reasonable measures to put out or control the fire when he can do so without substantial risk to himself, or who fails to give a prompt fire alarm, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if:
(1) He knows that he is under an official, contractual, or other legal duty to control or combat the fire; or
(2) The fire was started lawfully by him or with his assent and was started on property in his custody or control.
[3] Florida Rule of Criminal Procedure 3.380 provides as follows:

(a) If, at the close of evidence for the State or at the close of all the evidence in the cause, the court is of the opinion that the evidence is insufficient to warrant a conviction, it may, and on the motion of the prosecuting attorney or the defendant, shall, enter a judgment of acquittal.
(b) A motion for judgment of acquittal is not waived by subsequent introduction of evidence on behalf of the defendant, but after introduction of evidence by the defendant, the motion for judgment of acquittal must be renewed at the close of all the evidence. Such motion must fully set forth the grounds upon which it is based.
(c) If the jury returns a verdict of guilty or is discharged without having returned a verdict, the defendant's motion may be made or renewed within ten days after the reception of a verdict, and the jury is discharged or such further time as the court may allow.
[4] Section 924.071, Florida Statutes (1981), provides additional grounds for appeal by the state in criminal cases, none of which is applicable here:

(1) The state may appeal from a pretrial order dismissing a search warrant, suppressing evidence obtained by search and seizure, or suppressing a confession or admission made by a defendant. The appeal must be taken before the trial.
(2) An appeal by the state from a pretrial order shall stay the case against each defendant upon whose application the order was made until the appeal is determined. If the trial court determines that the evidence, confession, or admission that is the subject of the order would materially assist the state in proving its case against another defendant and that the prosecuting attorney intends to use it for that purpose, the court shall stay the case of that defendant until the appeal is determined. A defendant in custody whose case is stayed either automatically or by order of the court shall be released on his own recognizance pending the appeal if he is charged with a bailable offense.
[5] The circuit courts heard appeals "in all civil and criminal cases arising in the County Court, or before the County Judge, of all misdemeanors tried in criminal Courts, of judgments or sentences of any Mayor's Courts, and of all cases arising before Justices of the Peace in counties in which there is no County Court; and supervision and appellate jurisdiction of matters arising before County Judges pertaining to their probate jurisdiction, or to the estates and interests of minors, and of such other matters as the Legislature may provide." Art. V, § 11, Fla. Const. of 1885.
[6] At common law, the term "writ of error" was used to refer to the type of proceeding we now call an appeal. An appeal at common law was in the nature of a trial de novo in a court of superior jurisdiction while a writ of error was a means of having the judgment and record reviewed by a higher court. 4 Am.Jur.2d Appeal and Error § 2 (1962).
[7] The common-law rule against appeals by the state after acquittal was not derived from the double jeopardy clause. In fact, the connection between the two should be stated the other way around. But until the decision in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the constitutional rule against double jeopardy was not binding on the states. Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Nevertheless, early in the history of the Union most states adhered to the common-law rule for the same protective reasons often mentioned as underlying the double jeopardy clause. See, e.g., State v. Jones, 7 Ga. 422 (1849); State v. Johnson, 2 Clarke 549 (Iowa 1856); Commonwealth v. Cummings, 3 Cushing 212 (Mass. 1849); State v. Solomons, 6 Yerger 360 (Tenn. 1834); State v. Reynolds, 4 Haywood 100 (Tenn. 1817); Commonwealth v. Harrison, 2 Vir.Cas. 202 (Va. 1820).
[8] Nothing in the Bill of Rights, as made binding on the states through the fourteenth amendment, requires generally that persons convicted of criminal offenses be given the right to an appeal. Nevertheless, Florida grants such an appeal as a matter of right in section 924.06, Florida Statutes (1983). The only cases in which it might be suggested that there is a federal constitutional right of appeal are capital cases where the eighth amendment may require appellate review as a safeguard against arbitrariness. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).